

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

————————————————————

THE UNITED STATES OF AMERICA,

             v.

PRISCILLA VOGELBACHER,

                      Defendant.

————————————————————

1:20-CR-00098 – LJV-MJR

REPORT, RECOMMENDATION
and ORDER

This case was referred by the presiding judge, the Honorable Lawrence J. Vilardo, to this Court, pursuant to 28 U.S.C. §636(b)(1), to address non-dispositive discovery motions and to make a recommendation as to all suppression motions. Before the Court are omnibus motions by defendant Priscilla Vogelbacher ("defendant"), including a motion to dismiss and motions to suppress, as well as various discovery demands. (Dkt. No. 26). For the following reasons, it is recommended that defendant's motion to dismiss Count 1 of the Indictment and motions to suppress evidence be denied. The Court's decisions as to defendant's various discovery demands are also set forth in detail below.

## BACKGROUND AND PROCEDURAL HISTORY

On July 9, 2020, an Indictment was filed charging defendant with the following: (1) from in or about November 2018 until in or about June 2019, in the Western District of New York, and elsewhere, using facilities and means of interstate and foreign commerce, that is, a cellular telephone and the internet, knowingly persuading, inducing, enticing, and coercing, and attempting to persuade, induce, entice, and coerce, an individual under 18 years of age, that is, Victim 1, a person known to the Grand Jury, to engage in sexual

activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(b); (2) between on or about May 16, 2019, and on or about May 17, 2019, in the Western District of New York, and elsewhere, knowingly travelling in interstate commerce with a motivating purpose of engaging in illicit sexual conduct with another person, in violation of Title 18, United States Code, Section 2423(b); and (3) between on or about June 18, 2019, and on or about June 20, 2019, in the Western District of New York, and elsewhere, knowingly travelling in interstate commerce with a motivating purpose of engaging in illicit sexual conduct with another person, in violation of Title 18, United States Code, Section 2423(b). (Dkt. No. 15).

Defendant has filed omnibus pretrial motions seeking discovery and other relief, as well as dismissal of Count 1 of the Indictment and suppression of evidence. (Dkt. No. 26). The Government filed a response and made a cross-motion for reciprocal discovery. (Dkt. No. 29). On December 24, 2020, the Government provided a bill of particulars relative to Count 1 of the Indictment. (Dkt. No. 31). Oral argument on the motions was held on January 5, 2021, at which time the Court considered the matter submitted for decision.

## DISCUSSION

## MOTION TO DISMISS

Defendant moved to dismiss Count 1 of the Indictment as facially deficient for failing to identify a separate state or federal crime under which she can be prosecuted as an element of a violation of 18 U.S.C. § 2422(b). (Dkt. No. 26, ¶¶ 4-8).

The Federal Rules of Criminal Procedure require that an indictment should be "a plain, concise, and definite written statement of the essential facts constituting the offense

charged [...]." Fed. R. Crim. P. 7(c)(1).  A criminal defendant is entitled to an indictment that states the essential elements of the charge against him. *United States v. Pirro*, 212 F.3d 86, 91 (2d. Cir. 2000). An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). The Second Circuit has repeatedly confirmed that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)). An indictment must also "be read to include facts which are necessarily implied by the specific allegations made." *Id.* (quoting *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970)).

Here, defendant is charged with violating 18 U.S.C. § 2422(b) which makes it unlawful to use means of interstate commerce to entice a minor to engage in any sexual activity for which a person can be charged with a criminal offense. The essential elements of this crime are "that an individual (i) used a facility of interstate commerce; (ii) to knowingly persuade, induce or entice, or attempt to persuade, induce or entice; (iii) any individual who is younger than eighteen-years old; (iv) to engage in sexual activity of a criminal nature." *United States v. Brand*, 467 F.3d 179, 201-02 (2d Cir. 2006). The Indictment charging defendant tracks the language of the statute, states the approximate time and place of the alleged crime, and includes each of these essential elements.

Defendant contends that the Indictment is deficient on its face and must be dismissed as a matter of law because "it does not contain a specific New York Penal or Federal Law violation." (Dkt. No. 26, ¶ 8). The Government asserts that the Indictment is sufficient as it stands. A similar argument was raised in *United States v. Vickers*, wherein a defendant was charged by indictment with transportation of a minor victim in interstate commerce to engage in sexual activity for which any person could be charged with a criminal offense in violation of 18 U.S.C. §§ 2423(a) and 2423(e). *See* 13-CR-128, Dkt. No. 137, at 6-12 (W.D.N.Y. Nov. 19, 2015) (Arcara, J.), *aff'd* 708 F. App'x 732 (2d Cir. 2017) (summary order). There, the District Court rejected a claim that specification of the state statute Vickers was alleged to have violated was an essential element of the crime. *Id*. On appeal, the Second Circuit upheld the conviction stating that even if the omission was in error, the error was harmless because, in part, Vickers received a bill of particulars prior to trial specifying the underlying laws violated. *See* 708 F. App'x at 735-36. Here, as in *Vickers*, the Court is inclined to find that the Indictment is sufficient on its face.

However, such a determination is unnecessary. Any underlying concerns of proper notice and possible prejudice to the defendant have been alleviated by the Government's voluntary provision of a bill of particulars relative to this charge. (Dkt. No. 31). That filing provides a description of the criminal offenses for which Defendant could have been charged under state law in New York and Ohio. "When an indictment delineates the elements of a charged offense, however concisely, the underlying concerns of proper pleading – notice of the charge to be met and protection against double jeopardy – may be further promoted by a bill of particulars or pretrial discovery. *Stavroulakis*, 952 F.2d at 693 (citing *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir. 1976)). Indeed,

4

counsel for the defendant acknowledged at oral argument that the receipt of this bill of particulars left defendant with no good faith basis to support this motion. (Dkt. No. 32). Defense counsel further stated on the record his intent to withdraw the motion. (*Id.*). For these reasons, this Court recommends that defendant's motion to dismiss Count 1 of the Indictment be denied as moot.

## MOTION TO SUPPRESS EVIDENCE

Defendant moves to suppress evidence gained pursuant to search warrants issued in state court for her Facebook and Google accounts on the grounds that the warrants were overbroad. (Dkt. No. 26, ¶¶ 22-29). Defendant argues that the affidavits supporting the warrants asserted "'communication through the internet' based off the alleged victim statement" and provided "no direct dates or times relative to the communication, or the specifics linking particular apps or platforms just rather that multiple internet platforms were used and there was communication." (*Id.* at ¶ 23). Defendant objects that the warrants included "all of Defendant['s] Google and Facebook information." (*Id.* at ¶ 24). She further states that "[a]side from a date restriction, there is no other restriction on the information and invasion of defendant's privacy all based on a singular statement of an alleged victim." (*Id.* at ¶ 27).

The Fourth Amendment provides for: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures'

conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980); *Arizona v. Gant*, 556 U.S. 332, 345 (2009)). The Fourth Amendment guards against this practice by requiring that a warrant will issue only if: (1) the Government establishes probable cause to believe the search will uncover evidence of a specific crime; and (2) the warrant states with particularity the areas to be searched and the items to be seized. *United States v. Ganias*, 755 F.3d 125, 134 (2d Cir. 2014).

Search warrants must be specific. *United States v. Hill*, 459 F. 3d 966, 973 (9th Cir. 2006). "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.*; *see, e.g. United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017) ("breadth and particularity are related but distinct concepts"); *United States v. Hernandez*, 2010 U.S. Dist. LEXIS 719, at *23 (S.D.N.Y. Jan. 6, 2010) ("Although somewhat similar in focus, these are two distinct legal issues: (1) whether the items listed as "to be seized" in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers.).

In opposing this motion, the Government submits that the defendant has only challenged the breadth component of this inquiry. Defendant's motion papers state that she is asserting that both warrants were overbroad, however her arguments in support of the motion touch on issues of both breadth and particularity. At oral argument, defense counsel further clarified that defendant argues lack of particularity as well. Thus, the Court

construes defendant's motion as challenging both the breadth and particularity of the warrants and will address both issues herein.

a. *Overbreadth*

"When a warrant is challenged as overbroad, the issue is whether there existed probable cause to support the breadth of the search that was authorized." *United States v. Dinero Express, Inc.*, 2000 U.S. Dist. LEXIS 2439, at *25 (S.D.N.Y. Mar. 6, 2000) (citation omitted). The probable cause analysis is based on the totality-of-the-circumstances, with the task of the issuing magistrate to "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [...] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . [concluding]" that probable cause existed. *Id.* at 238-39.

Here, the search warrants were plainly supported by probable cause sufficient to justify the search of defendant's Facebook and Google accounts for the specified time periods. Each warrant application contained a detailed affidavit and supporting documentation showing the victim's allegations and law enforcement's investigation and corroboration of those allegations. Those applications stated that the victim told law enforcement that defendant communicated with her between Summer 2018 and July 2019 using Facebook and Google applications. (See Dkt. No. 30, pg. 8, "The online platforms that were used by [victim] and Priscilla were Facebook and Google Hangouts chat app;" pgs. 38, 39, "[victim] used multiple forms of communication with Priscilla including "Hangouts" email and [...] Facebook Messenger"). Further, courts routinely

7

uphold warrants to search entire electronic accounts as was issued here. *See United States v. Scully*, 108 F. Supp. 3d 59, 95 (E.D.N.Y. 2015) (quoting *In re A Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@Gmail.com Maintained at Premises Controlled by Google, Inc.*, 33 F. Supp. 3d 386, 391 (S.D.N.Y. 2014)) ("[n]otably, every case of which we are aware that has entertained a suppression motion relating to the search of an email account has upheld the Government's ability to obtain the entire contents of the email account to determine which particular emails come within the search warrant."); *see also United States v. Liburd*, 2018 U.S. Dist. LEXIS 94440, at *8 (E.D.N.Y. June 5, 2018) ([B]ecause of the nature of digital media searches, it was proper for the search warrant to allow the FBI to search the entire contents of Defendant's Facebook account, once [the judge] determined that there existed probable cause to believe that evidence relating to Defendant's criminal activity was contained in that account, even if the account also contained information unrelated to criminal activity.").

Thus, the breadth of the warrants issued for defendant's Facebook and Google accounts was appropriate because they were supported by probable cause to believe the accounts contained evidence of a crime.

b. *Particularity*

The particularity requirement has three components: (1) a warrant must identify the specific offense for which the police have established probable cause; (2) a warrant must describe the place to be searched; and (3) the warrant must specify the items to be seized by their relation to designated crimes. *Galpin*, 720 F.3d at 445-46 (citations and quotations omitted). Because of the scope and quantity of digital information, such as that

stored on a computer hard drive, the Second Circuit has warned of "a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." *Id.* at 446-47 (citation omitted). This threat demands a heightened sensitivity to the particularity requirement in the context of digital searches. *Id.*

A failure to describe the items to be seized with particularity offends the Fourth Amendment "because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *See United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992)). Specificity in the application for a warrant does not cure facial deficiencies in the warrant itself. *United States v. Purcell*, 967 F.3d 159, 179 (2d Cir. 2020). "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). "Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it." *George*, 975 F.2d at 76.

Here, neither search warrant specified the offense for which officers had established probable cause. The warrants authorized the search of information stored by Facebook and Google associated with defendant's accounts for specific time periods but did not state any offense on their face. Both warrants were supported by affidavits of Detective Matthew Kachermeyer of the Jamestown Police Department, Jamestown, New York. The applications also included lengthy supporting documentation, in the form of police reports and other relevant evidence. Detective Kachermeyer's application for the search of defendant's Google account stated that he believed the account would show

evidence of violations of rape in the third degree and endangering the welfare of a child, under New York Penal Laws 130.25 subdivision 2 and 260.10 subdivision 1, respectively. The warrant application for defendant's Facebook account did not explicitly state an offense. Nonetheless, each warrant application provided ample detail regarding the defendant's alleged sexual contact with a minor child.

Although the Government represents that each application and supporting documents were attached to the respective warrants, neither warrant incorporates the applications by reference. The law is clear that an unattached, incorporated affidavit cannot cure a defective warrant. *See Groh*, 540 U.S. at 554; *George*, 975 F.2d at 76; *see also United States v. Rosa*, 626 F.3d 56, 62-64 (2d Cir. 2010) (a search warrant for all of defendant's digital media lacked particularity because it directed officers to seize and search certain electronic devices, but provided them no guidance as to the type of evidence sought and its unincorporated, unattached supporting documents could not cure this defect). Here, it does not need to be decided whether these warrants should be invalidated for lack of particularity. Even if this Court held that the warrants violated the Fourth Amendment, application of the exclusionary rule would be inappropriate.[1]

"Application of the exclusionary rule depends on the efficacy of the rule in deterring Fourth Amendment violations in the future, as well as a determination that the benefits of deterrence outweigh the costs." *Rosa*, 626 F.3d at 64 (internal quotations omitted). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion

---

[1] The Court also notes that the practical effect of exclusion of the evidence gained from these warrants is limited because the Government has obtained substantially overlapping evidence of the communications between defendant and victim through the victim's electronic accounts. However, certain evidence, including defendant's relevant communications with third parties about illegal conduct, may be exclusive to defendant's accounts.

can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009); *see also United States v. Leon*, 468 U.S. 897 (1984) (holding that evidence seized pursuant to a challenged warrant is not subject to suppression so long as law enforcement acted with objective and reasonable good faith, even if the judicial officer erred in finding probable cause). Here, as in *Rosa*, "a reasonably well trained officer is not chargeable with knowledge that this search was illegal in the particular circumstances before us." 626 F.3d at 64. In fact, the circumstances here diverge from a traditional warrant directing law enforcement to execute a search within certain parameters. The warrants at issue, although directed to "any law enforcement officer [...] assisting in this investigation," were utilized to order Facebook and Google to produce specified electronic information in a subpoena-like manner, not to guide the officers receiving the information.

The Second Circuit recently addressed similar circumstances in which a warrant authorized the search of a defendant's Facebook account without specifying any suspected offense. *See Purcell*, *supra*, 967 F.3d 159. There, the Court explained that "[b]ecause [...] the Warrant called for Facebook, Inc. to turn over specified information without first culling the information itself, the scope of Facebook's 'search' and its identification of the items to be seized were not tethered to its cognizance of the suspected criminal conduct." *Id.* at 182. The Court further opined:

> In this case, neither Facebook, Inc.'s performance of its obligations under the [...] Warrant nor the [District Attorney's Office's] subsequent analysis of the seized evidence was directly guided by the warrant's specification of (or failure to specify) the suspected offense. Therefore, the warrant's omission of that specification did not broaden or otherwise affect the scope of the search and seizure. In this context, the structure of the warrant rendered the specification of the suspected offense, while constitutionally indispensable, functionally unnecessary. The warrant, a complicated and novel hybrid of a traditional warrant and a subpoena, operated in the intended manner,

allowing officers to obtain only the items for which probable cause existed and to review them for evidence of specific suspected criminal activity. As in *Rosa*, the warrant's defect was an "inadvertent error," and all evidence indicates that "the officers acted reasonably" and "proceeded as though the limitations contemplated by the supporting documents were present in the warrant itself." *Id.* at 65-66. Under the circumstances, it was reasonable for officers to rely on the warrant, notwithstanding its clear omission of an essential piece of information.

*Id.* at 183.

In the case at hand, the account information was returned by Facebook and Google as directed and the lack of a stated offense did not affect the analysis of that evidence. The affidavits and supporting documentation accompanying the warrants made it clear to any officer reviewing the obtained electronic material that the purpose of the search was to obtain evidence of statutory rape and child endangerment.[2] Moreover, the Government represents that the officer or officers involved in the subsequent review of the records produced by Facebook and Google had sufficient knowledge to guide any uncertainty about the suspected crimes. *See Purcell*, 967 F.3d at 182 (explaining that both logic and the record indicate that the officers who conducted the analysis of defendant's Facebook data were already involved in the investigation and fully aware of its purpose and parameters such that their analysis was not affected by the warrant's failure to specify the suspected offense); *cf. In re 650 Fifth Ave.*, 934 F.3d 147, 162-64 (2d Cir. 2019) (declining to apply good faith exception where warrant was facially deficient and "a[n investigative] team without particularized knowledge of the proper scope of the search seized over two hundred boxes of evidence and several computers."). Finally, the omission of the specific offense defendant is alleged to have committed, does not actually

---

[2] While unincorporated, unattached documents cannot cure a constitutionally defective warrant, these documents are relevant to a determination of whether officers acted in good faith. *See Rosa*, 626 F.3d at 64.

appear to have given rise to a less particularized search or seizure of evidence. *See Purcell*, 967 F.3d at 182.

In sum, it was reasonable for officers to rely on these warrants. As the Second Circuit concluded in both *Purcell* and *Rosa*, the goals of the Fourth Amendment are not met by exclusion of this evidence. For these reasons, the Court recommends that defendant's motion to suppress evidence be denied.

<u>MOTION TO PRECLUDE STATEMENTS</u>

Defendant moves to preclude introduction of her statements on the basis that "it appears that the government does not intend to use any statement from Ms. Vogelbacher against her at trial." (Dkt. No. 26, ¶ 14). The Government disputes this assertion and submits that it has already provided defendant with several of her statements which it intends to use at trial. (Dkt. No. 29, pg. 14). The Government clarifies that it is not currently aware of any statements made by defendant to law enforcement or before the grand jury that would fall under Fed. R. Crim. P. 16(a)(1)(A), 16(a)(1)(B)(ii), or 16(a)(1)(B)(iii). The Government submits that if it later comes into possession of such a statement, it will be provided to defendant pursuant to its continuing discovery obligations. Accordingly, it is recommended that this motion be denied as moot.

<u>OMNIBUS DISCOVERY DEMANDS</u>

*<u>Bill of Particulars</u>*

Defendant moves for a bill of particulars. (Dkt. No. 26, ¶ 9). She seeks particularization as to the following items, *inter alia*, (1) the exact date, time, and place the alleged offenses occurred; (2) the alleged means used to commit the offenses; (3) the type of sexual conduct alleged; (4) where the alleged conduct occurred; (5) what statute

was violated by the alleged sexual conduct; (6) whether or not the defendant acted alone or in concert with another individual. (*Id.*).

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983). Further, it is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990).

The charges here are neither complex nor difficult to understand. They allege that, during specific time periods, defendant engaged in enticement of a minor and travelled to engage in illicit sexual conduct. Further, the Government submits that it has already provided considerable information about the charges to the defendant through the Criminal Complaint and voluntary discovery, including search warrant returns for the defendant and victim's Facebook and Google accounts, search warrant applications,

case files from the Town of Ellicott and Jamestown Police Department, photographs, and business records. (Dkt. No. 29, pg. 10-11).

Rule 16 discovery has been provided. Defendant is not permitted to use a bill of particulars to learn evidentiary detail or the Government's legal theory. The Indictment plainly allows defendant to identify the charges against her, avoid surprise at trial, and interpose a plea of double jeopardy if necessary. Additionally, as discussed above, the Government has filed a bill of particulars identifying the specific state offenses for which the defendant could be charged relative to Count 1. (*Id.*). Defendant's request is moot in that regard. For these reasons, defendant's request for a bill of particulars is denied.

### *Rule 16 Discovery and Rule 12 Notice*

Defendant moves for discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, which requires that the Government disclose evidence and information upon request of a defendant. (Dkt. No. 26, ¶¶ 10-13).

While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him." *United States v. Percevault,* 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the Government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Federal Rules of Evidence 702, 703 and 705. *See* Fed. R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other

Government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Here, defendant has specifically requested, *inter alia*, all video and audio recordings; documents and tangible objects in the government custody or control; all reports, photographs, and documents relating to the investigation; and all results or reports of physical or mental examinations and scientific tests, disclosure of names and identifies of expert witnesses. Defendant also requests a subpoena for body camera footage of the Jamestown Police Department from the arrest, interview, or otherwise related to the defendant or the alleged victim and medical records of victim.

The Government submits that it has provided defendant with, or made available for inspection by defense counsel, all requested items, in its possession, that are relevant to this case and discoverable pursuant to Rule 16. (Dkt. No. 29, pgs. 12-13). It further states that it has no relevant body camera footage in its possession, nor is it in possession of any medical reports from the victim in this case. Based upon the representations made by the Government, including that it will continue to provide discoverable evidence as it becomes available, the Court finds that the Government has complied with Rule 16. The Court therefore denies defendant's request as moot. The Government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

Pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure, defendant also moves for written notification of any evidence the government intends to use in its case-in-chief at trial. (Dkt. No. 26, ¶ 10). The Government has provided notice that it intends to use all items of evidence that the defendant has been provided with or been

made aware of. (Dkt. No. 29, pg. 24). This branch of defendant's motion is denied as moot.

### *Early Disclosure of Witnesses and Jencks Act Materials*

Defendant moves for early disclosure of witness names and statements prior to trial. (Dkt. No. 26, ¶¶ 15-16, 30-32). The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of Title 18 of the United States Code requires that the Government, on motion of defendant, disclose a Government witness's prior statements that are in the Government's possession and relate to the subject matter of the witness's direct testimony. *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

The Government indicates that it will disclose all 3500 material sufficiently prior to trial to allow defendant adequate time to prepare and, in accordance with the District Court's pretrial order, to permit the Court to conduct the trial in an orderly and efficient manner. In light of the Government's representations, defendant's request for early disclosure of witness statements is denied as moot.

*Preservation of Rough Notes*

Defendant moves for an order requiring the preservation of all rough notes of government agents and officers generated during the instant investigation. (Dkt. No. 26, ¶¶ 17-19). The Government states that it agrees to this request and has already instructed the agents involved in this matter to preserve their rough notes. (Dkt. No. 29, pg. 15). The Court grants defendant's motion and directs the Government to arrange for the preservation of all rough notes and related information, to the extent it has not already done so.

*Grand Jury Transcripts*

Defendant requests production of grand jury transcripts and exhibits on the basis that she is the subject of a "bare bones" indictment and needs to be "informed of the what evidence actually exists against her, so that she can intelligently make a decision as to her course of action." (Dkt. No. 26, ¶¶ 20-21). The burden is on the defense to show that "a particularized need" exists for the minutes which outweighs the policy of secrecy. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *United States v. Calandra,* 414 U.S. 338, 345 (1974). A defendant is not entitled to inspect grand jury minutes and evidence without producing "concrete allegations of Government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994). Defendant has not made any such allegations or showing of necessity here. The generalized claim that defendant needs the materials to decide how to proceed in the instant case fails to meet this standard. *See United States v. Jones*, 13-CR-193, 2014 U.S. Dist. LEXIS 84452, at *18 (W.D.N.Y May 29, 203), *adopted by*

2014 U.S. Dist. LEXIS 84023 (W.D.N.Y. June 19, 2013). The Court notes, however, that "transcripts of grand jury testimony of witnesses called by the government to testify at trial must be made available to the defendant pursuant to and in accordance with the provision[s] of 18 U.S.C. §3500." *United States v. Mehta*, 11-CR-268, 2013 U.S. Dist. LEXIS 63749, at *30 (W.D.N.Y. May 3, 2013). Therefore, to the extent that defendant requests grand jury material that is not also 3500, *Brady,* or *Giglio* material, the motion is denied.

### Disclosure of Brady Material

Defendant moves for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio* and their progeny.[3] (Dkt. No. 26, ¶ 33).

The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

Here, the Government affirms its duty to provide defendant with exculpatory evidence, as well as evidence that the defense might use to impeach government witnesses at trial. (Dkt. No. 29, pg. 21). The Government also indicates that it is aware of its obligations and responsibilities under *Brady* and acknowledges its continuing duty to produce such material. (*Id.*).

Given the Government's representations, defendant's motion to compel the production of *Brady/Giglio* material is denied. The Government is reminded of its continuing *Brady* obligations and, consistent with *Coppa*, the Government shall timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, 14-CR-00224, 2016 U.S. Dist. LEXIS 133400, *10 (W.D.N.Y. Sept. 28, 2016).

### *Disclosure of Evidence Pursuant to Rules 404(b), 608 and 609*

Defendant moves for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. No. 26, ¶¶ 34-35). Defendant also moves for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609. (*Id.*) The Government states that it will provide reasonable notice in advance of trial of the general nature of prior uncharged crimes that it intends to use at trial under Rule 404(b). (Dkt. No. 29, pgs. 22-23). It further submits that it has no obligation to provide pre-trial notice of impeachment evidence under Rules 608 and 609 and will address same in its pre-trial

memorandum to the District Court. The Government further states that, pursuant to Rule 404(b), it intends to introduce at trial, all prior criminal conduct acts or wrongs for the purpose of showing proof of a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and the absence of mistake or accident. The Government indicates it will provide this information in reasonable time in advance of trial and when directed by the trial judge. The Government states that should it become aware of additional Rule 404(b), Rule 608, or Rule 609 evidence, it will notify defendant in advance of trial.

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b). Rule 608 of the Federal Rules of Evidence does not contain the same pretrial notice requirement. Based upon the Government's representation that it will disclose bad act or impeachment evidence prior to trial, defendant's motion is denied as moot. The Court instructs that any disclosure should be done in accordance with the District Court's pretrial order. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of the District Court at the time of trial.

### *Leave to File Additional Motions*

Defendant also moves to preserve her right to make further and additional motions. (Dkt. No. 26, ¶¶ 36-37). To the extent defendant intends to bring motions based upon new rulings, information, or evidence, her request for leave to file additional motions is granted. To the extent defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied

without prejudice to bringing the motion upon a showing of good cause for the untimely filing.

_Government's Request for Reciprocal Discovery_

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of the defendant and which the defendant intends to introduce as evidence at trial, as well as the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case. (Dkt. No. 29, pgs. 24-25). The Government's motion for reciprocal discovery is granted, and defendant is reminded that her disclosure obligations continue up through and during trial. _See_ Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss and motions to suppress be denied. (Dkt. No. 26). It is ordered that defendant's omnibus discovery demands are decided in the manner detailed above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to the recommendations portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation and Order in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal

Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59.  Any requests for an extension of this deadline must be made to Judge Vilardo.

**Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED**.

Dated:  February 1, 2021
        Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

23